IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES M. GANAWAY, )
  )
          Plaintiff, ) 2:05-cv-1657
   v. )
  )
CITY OF PITTSBURGH, DEPARTMENT )
OF PUBLIC SAFETY, )
  )
          Defendant. )

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court is the MOTION FOR SUMMARY JUDGMENT *(Document No. 53),* with brief in support, filed by Defendant City of Pittsburgh, Department of Public Safety (the "City"). Plaintiff, James Ganaway, has filed a brief in opposition and a response to the concise statement of facts (*Document Nos. 65, 68*). The City has filed a reply brief (*Document No. 70*), both parties have submitted numerous exhibits, and the motion is ripe for disposition.

Factual and Procedural Background

Plaintiff is a fifty-six year old African-American male who has been employed as a police officer by the City since November 3, 1980. The Complaint alleges that the City failed to promote Ganaway to sergeant due to discrimination based on race, gender, and/or age and asserts claims under Title VII, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pittsburgh City Code § 659.02.

On September 19, 1987, Ganaway severely injured his left knee while making an arrest.

For the next thirteen years, Ganaway was on workers compensation, light duty or modified duty, and did not wear a uniform, carry a firearm, operate a police vehicle or make an arrest. He did write reports, appear in court, interview victims and have contact with the general public. In July 1988, Ganaway returned to light duty in the warrant office. Three weeks later, he injured both knees, an arm, and his back in a fall on concrete stairs. He also suffered a back injury in a car accident. Ganaway did not return to work until June 1994, in the Telephone Reporting Unit, a modified/light duty program. On January 9, 1996, Ganaway fell in an icy parking lot, hurt his thumb, and subsequently developed Reflex Sympathetic Dystrophy in his right arm. When he returned to work in 1998 as a photographer in the ID section, his hand was still swollen. In December 1999, Ganaway received permission from Dr. Edwards to shoot a gun again and qualified with his service revolver. On January 17, 2001, Ganaway returned to full active duty and was assigned to Zone 5, which is a high-crime area.

No performance evaluations were conducted for the periods when Ganaway was on workers compensation or light duty. Sergeant David Herrmann performed an evaluation for January-June 2001, noting that Ganaway "needs improvement" in the following categories: problem solving, firearms, timely and organized, and field performance/follows directions. There were several comments on the evaluation which noted that Ganaway required additional supervision and assistance due to his extended absence from active duty. Ganaway commented on the review that he "should have had training before hitting the streets."

Requirements for promotion to sergeant at the time Ganaway applied included MPOETC certification and "considerable knowledge of firearms." On October 15, 1997, the City posted a Notice of Competitive Examination ("NCE") for the position of sergeant. The announcement

listed the following job duties and knowledge/abilities: patrols assigned district and monitors performance of police officers; responds immediately to calls of a serious nature; takes charge until relieved by ranking officer; initiates miscellaneous reports; maintains records and prepares accurate reports; ability to withstand physical strain and personal hazards when involved in major police problems; deal with situations requiring quick and accurate decision-making; use and care for firearms; ability to communicate effectively, both orally and in writing. The announcement did not contain a prohibition against candidates who were on restricted duty. While still on workers compensation, Ganaway took the NCE and scored 19th out of 160 candidates on the written test. The Eligibility List was posted in March 1998 and expired on March 19, 2001. The last promotion from the Eligibility List occurred on April 27, 2001. Cassandra Wisniewski had been selected in February 2001 but was on maternity leave and could not start her new duties right away.

At all times, Police Chief Robert McNeilly made the final decisions with regard to promotions. Based on the selection procedure set forth in the Policemen's Civil Service Act, four names were submitted to McNeilly for each opening and he then selected the most qualified of those four candidates.

In September 1998, the police bureau sought to fill fifteen vacancies for sergeants. The personnel staff certified the top 29 scores for consideration. The top fifteen candidates were selected to fill these vacancies and Ganaway does not contest this employment action. In August 2000, five more sergeant positions opened up. The next eleven names on the Eligibility List, including Ganaway's, were submitted to Chief McNeilly. Ganaway was not selected for promotion. Ganaway testified that the City had no obligation to promote him to sergeant while

he was injured or until he could return to full active duty. PCHR Transcript at 30-31. In January 2001, seven more sergeant vacancies accrued. Ganaway was considered for promotion but he was not selected. In February 2001, six more vacancies occurred and again Ganaway was not promoted to sergeant. In all, sixteen persons who scored lower than Ganaway on the NCE were promoted to sergeant.

McNeilly stated the following reasons in his affidavit, among others, for not promoting Ganaway: insufficient decision-making ability; subordinates would not have had confidence in his decisions which could jeopardize public safety; deficient communication skills; his performance had to be closely monitored; and he needed extra training. McNeilly was aware that it was necessary to place Ganaway with a field training officer to get back to the level of a full duty officer, and felt that a person in that situation could not be promoted. McNeilly also expressed reservations based on his personal observations, during the approximately ten years before he became Chief of Police, of Ganaway's performance, personality, and ability to handle more responsibility.

Ganaway was the only one of the ten persons over the age of forty who scored in the top 35 on the NCE who was not promoted. Three of the people promoted were older than Ganaway. Ganaway was the only one of the four African-Americans who scored in the top 35 on the NCE who was not promoted. The other three African-Americans who scored in the top 35, and who received promotions, were female. Ganaway was the only one of the 25 males who scored in the top 35 on the NCE who was not promoted. Subsequent examinations for sergeant were offered. Ganaway never re-took the test. Accordingly, evidence occurring after April 2001 – including Dr. Wettstein's evaluation and the stray comments by Ganaway's "peers"– is irrelevant.

Ganaway cross-filed discrimination claims with the Pittsburgh Commission on Human Rights (PCHR) and EEOC on April 26, 2002, or 363 days after he allegedly learned that Wisniewski had received the final promotion from the Eligibility List. Ganaway did not allege gender discrimination in his administrative claims.

Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh*

*Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

Legal Analysis

Race, gender and age discrimination claims are analyzed under the familiar McDonnell-Douglas burden-shifting framework. If Plaintiff can make out a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action, and if so articulated, the burden shifts back to Plaintiff to demonstrate that the employer's stated reason was pretextual. The same legal standards govern the Title VII, ADEA and Pittsburgh City Code

claims, which will be addressed collectively. *See City of Pittsburgh, Dept. of Public Works v. Foster*, 669 A.2d 492 (Pa. Commw. 1995) (outlining prima facie case and burden-shifting analysis for claim under Pittsburgh City Code § 659.02).

1. Plaintiff's Claims Are Untimely

As an initial matter, Defendant argues that Plaintiff's Title VII and ADEA claims are barred due to his failure to have timely filed a charge with the EEOC. The Court agrees, albeit with the clarification that such an error is not "jurisdictional," but rather, constitutes a failure to timely exhaust administrative remedies. *Watson v. Kodak*, 235 F.3d 851, 854 (3d Cir. 2000).

The Court will assume that Plaintiff did not learn of the unlawful employment practice until April 27, 2001. The EEOC and PCHR claims were cross-filed on April 26, 2002, 363 days later. 42 U.S.C. § 2000e-5(e)(1) states, in relevant part:

> in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ..., such charge shall be filed by or on behalf of the person aggrieved within **three hundred days** after the alleged unlawful employment practice occurred, **or** within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, **whichever is earlier**.

(Emphasis added). Plaintiff contends that because the PCHR provides individuals with a one-year period to file a claim, the 300-day limitations period for filing an EEOC claim that would otherwise apply in a deferral state such as Pennsylvania is extended. Plaintiff believes that this is an issue of first impression. Perhaps there is no case law on point because the statute so clearly forecloses Plaintiff's argument – the EEOC claim must be filed within 300 days or within 30 days after the state/local proceeding ends, "whichever is earlier." Thus, the state/local

7

proceeding does **not** extend the 300 day deadline.  Because Plaintiff admits that his EEOC claim was filed 363 days after he learned of the alleged unlawful failure to promote, it is untimely.

Plaintiff argues, in the alternative, that the time period should be equitably tolled. Although the time limitation for filing with the EEOC may be equitably tolled, the doctrine of equitable tolling is to be applied "sparingly." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  The United States Court of Appeals for the Third Circuit has identified three occasions when the doctrine may apply: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir.1994). None of these grounds apply.  Plaintiff's brief concedes that he sought advice from his union and the Pittsburgh Civil Service Commission, which redirected him to PCHR.   There is no evidence that the Department of Public Safety actively misled Ganaway about his rights or that Ganaway received any advice regarding the EEOC.   Plaintiff provides no explanation (other than his "busy schedule") for why he waited six months to meet with the Civil Service Commission or why he failed to followup with PCHR from December 2001 through April 2002.  There is simply no extraordinary basis by which Ganaway was prevented from asserting his rights.  *See Parker v. Royal Oak Enterprises, Inc.*, 85 Fed. Appx. 292 (3d Cir. 2003) (unpublished).  As explained above, Ganaway's timely filing with the PCHR cannot extend the EEOC filing period.  In summary, Ganaway's Title VII and ADEA

claims are barred by his failure to timely exhaust his administrative remedies.[1]

2. There is No Evidence of Pretext

Assuming, arguendo, that Plaintiff's action was timely filed, he cannot meet his burden to prove pretext.[2] The City has articulated numerous legitimate and non-discriminatory reasons for not promoting Ganaway. On this record, construed in the light most favorable to Ganaway, no reasonable factfinder could find that the reasons articulated by the City were a pretext for race, gender or age discrimination.

The United States Court of Appeals for the Third Circuit has clearly and repeatedly explained that it is not the role of the courts to second-guess the wisdom, prudence or competence of the employer's decision. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Plaintiff cannot merely show that the employer's decision was wrong or mistaken, but rather, must demonstrate that the decision was motivated by discriminatory animus. *Id.* Plaintiff's evidence must allow a reasonable factfinder to infer that each of the employer's proffered legitimate, non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action. *Id.* at 764. In other words, Ganaway "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Id.* at 765; *Accord Keller v. Orix Credit Alliance,*

---

[1]Ganaway's gender discrimination claim is also barred because the EEOC charge gave no indication that the failure to promote was based on gender. *Galvis v. HGO Services*, 49 F. Supp.2d 445 (E.D. Pa. 1999). Plaintiff does not contest this argument.

[2] The Court will also assume, arguendo, that Plaintiff can make out a prima facie case.

*Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997) (Plaintiff "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."); *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)("principles explained in *Fuentes* [] require plaintiffs to present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision."). It should be emphasized that Chief McNeilly was not required to select the candidate who had scored highest on the test. Rather, Chief McNeilly had the authority to use his judgment as to which candidate was most qualified.

The record evidence in this case is significant and compelling. No reasonable factfinder could conclude that each of Chief McNeilly's numerous reasons for not promoting Ganaway is unworthy of belief. For instance, McNeilly opined that Ganaway was unfit to be promoted because he still required additional oversight and training to perform satisfactorily as an active duty officer. Ganaway's own comment on his performance review agreed with Chief McNeilly's assessment, stating "I should have had training before hitting the streets." Similarly, Ganaway does not dispute that McNeilly had numerous occasions, over many years, to interact with him and to assess his performance, personality, decision-making, and leadership ability. It is not the Court's role to second-guess such employer judgments. The performance review from January-June 2001 (which covered the period from Ganaway's return to full duty through the expiration of the Eligibility List), echoed many of McNeilly's stated concerns. Ganaway has not pointed to other candidates who were promoted to sergeant that needed similar improvement in problem-solving, assistance in handling a crisis, organization and report writing, and the need for additional supervision. Further, it is not implausible that a sergeant who had just returned from a

thirteen-year absence from active duty might be unable to earn the confidence and respect of his would-be subordinates. It is even more obvious that Ganaway would not be selected for promotion to sergeant while he was still on restricted duty, as he would be unable to perform the essential functions of the position. In summary, Plaintiff has wholly failed to cast doubt on Chief McNeilly's credibility and has not demonstrated any implausibilities or inconsistencies in the City's numerous proffered non-discriminatory reasons for not promoting him.

As a final note, the Court rejects Ganaway's attempt to create a separate class for "African-American males over age 40." As Defendant correctly argues, such attempts to combine the protected categories have been squarely rejected. *See Taylor v. Procter & Gamble Dover Wipes,* 184 F.Supp.2d 402, 407 (D.Del. Feb 06, 2002)*; Floyd v. State of New Jersey*, 1991 WL 143456 (D.N.J. 1991) (Title VII protects sex or race, each of which must be analyzed separately). The record demonstrates that a diverse group of candidates was promoted to sergeant, including numerous African-Americans, numerous males and numerous persons over age 40. Indeed, Ganaway was the only African-American, male, and/or person over age 40 who scored in the top 35 but was not promoted. There is no basis on which a reasonable fact-finder could conclude that the failure to promote Ganaway was due to his race, age or gender, rather than to the legitimate, non-discriminatory reasons articulated by the City.

An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES M. GANAWAY, | ) | |
| | ) | |
| Plaintiff, | ) | 2:05-cv-1657 |
| v. | ) | |
| | ) | |
| CITY OF PITTSBURGH, DEPARTMENT | ) | |
| OF PUBLIC SAFETY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW this 4th day of February, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION FOR SUMMARY JUDGMENT *(Document No. 53)* filed by Defendant City of Pittsburgh is **GRANTED**. The clerk shall docket this case closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Lois E. Glanby, Esquire
Email: attorneyglanby@aol.com

Christopher J. Sichok, Esquire
Email: Christopher.Sichok@city.pittsburgh.pa.us